UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | **DECISION AND ORDER** |
| v. | 17-CR-00028(FPG)(JJM) |
| JESSE LEWIS and VALENTINO SHINE, | |
| Defendants. | |

_____

Before the court is the government's motion for an order directing defendants to provide DNA buccal samples to law enforcement for analysis by the Erie County Central Police Services Forensic Laboratory (the "Forensic Laboratory") [105]. Having considered the parties' submissions [105, 106, 110], the motion is granted.

**BACKGROUND**

Defendants are charged in a Superseding Indictment [58] with controlled substance related offenses (id., Counts 1 and 6), arising from an October 31, 2016 traffic stop of a vehicle driven by defendant Lewis, in which defendant Shine was a passenger. Astorga Affidavit [105], ¶2. Multiple bags of cocaine base were recovered from both the vehicle and from defendant Shine's person. Id. Defendant Lewis is also charged with firearms offenses (Superseding Indictment [58], Counts 4 and 5), arising from a September 30, 2016 search of his home, which recovered a loaded firearm. Astorga Affidavit [105], ¶3.

Both the cocaine base recovered from the October 31, 2016 traffic stop and the firearm recovered from the September 30, 2016 search were submitted to the Forensic Laboratory for DNA testing. Id., ¶4. DNA Analysis Reports from the Forensic Laboratory indicate that the recovered items each contain DNA from unknown individuals, including at least

one male. [105-1], p. 2 of 2; [105-2], p. 2 of 3. They further indicate that none of the samples are suitable for entry into the Combined DNA Index System ("CODIS") and that "[k]nown buccal samples are required for further comparison". Id. The government seeks to obtain a DNA buccal sample from defendants for that purpose. It argues that defendants' possession of the recovered items "has been contested throughout the course of this litigation and will be central at trial". Government's Memorandum of Law [106], p. 6.

Defendant Lewis has filed opposition to the government's motion [110], but no opposition was filed by defendant Shine, who is proceeding *pro se* with standby counsel. *See* February 12, 2018 Text Order [124], setting a February 23, 2018 deadline for defendant Shine's response. For that reason, the government's motion as to defendant Shine is granted as unopposed. However, even if he had joined in defendant Lewis's opposition, the motion would be granted for the reasons set forth below.

## ANALYSIS

As defendant Lewis recognizes, courts in this District "have adopted the reasonableness standard in analyzing whether or not an individual must submit to a buccal swab while in custody". Defendant Lewis's Memorandum of Law [110], p. 4. "Obtaining buccal swabs is a minimally-intrusive process, and if the United States establishes reasonable individualized suspicion that the procedure will lead to admissible DNA evidence in a criminal case, the Court will ordinarily authorize it." United States v. Hayes, 2017 WL 1437213, *2 (W.D.N.Y. 2017). Here, a grand jury has found probable cause for the crimes arising from defendants' possession of the cocaine base seized on October 31, 2016 and defendant Lewis's possession of the firearm seized on September 30, 2016. Superseding Indictment [58], Counts 1,

4, 5, and 6). Coupled with the government's representations concerning defendants' connection to the recovered items (Astorga Affidavit [105], ¶¶2, 3) and the Forensic Laboratory's representation that "[k]nown buccal specimens are required for further comparison" ([105-1], p. 2 of 2; [105-2], p. 2 of 3), the government has met its burden of establishing reasonable individualized suspicion that the buccal swabs will lead to admissible DNA evidence.

However, defendant Lewis argues that Maryland v. King, 569 U.S. 435 (2013) weighs against granting the motion. Defendant Lewis's Memorandum of Law [110], pp. 4-6. At issue in King was the Maryland DNA Collection Act, which permitted buccal swabbing of arrestees charged with certain serious crimes. Id. at 442-44. The Court held that the "substantial" government interest in "a safe and accurate way [for law enforcement] to process and identify the persons and possessions they must take into custody" (id. at 449, 461) outweighed the "minimal" intrusion necessary to obtain a DNA sample by buccal swab. Id. at 461.

According to defendant Lewis, "the interests articulated in favor of using a buccal swab in the King case are not present in this matter because we are post-detention and [he] has not disputed his identity in this case". Defendant Lewis's Memorandum of Law [110], p. 5. I disagree. Here, "the [government's] interest is both stronger and more specific. Instead of merely seeking to identify [defendant], the government hopes to link him to the firearms recovered here by matching his DNA to the genetic material it may locate on the weapons. While in King, the DNA collected in a subsequent arrest helped tie the defendant to a prior [crime], the collection here is not intended for a general database, but for specific comparison to actual evidence in this case." United States v. Haight, 2015 WL 7985008, *1 (D.D.C. 2015).

King also held that the inclusion of the DNA sample in CODIS "did not intrude on respondent's privacy in a way that would make his DNA identification unconstitutional",

explaining that it does not reveal "information beyond identification". 569 U.S. at 464 ("the CODIS loci come from noncoding parts of the DNA that do not reveal the generic traits of the arrestee"). Defendant Lewis argues that "the shortcomings of the CODIS system that protected the disclosure of private information" in King "may not be present" here, and therefore "the Court should not compel the production of DNA evidence without a more fulsome understanding of the methodology that will be used to scrutinize the DNA". Defendant Lewis's Memorandum of Law [110], p. 6. However, in King the court recognized that even if the DNA could provide some medical information, the Act limited the use of the DNA to "[n]o purpose other than identification". 569 U.S. at 464-65. The government is similarly instructed here that the use of the DNA is limited to comparing it to the DNA from the recovered items.

Defendant Lewis further questions why an additional DNA sample is necessary when he previously submitted DNA samples to law enforcement. Defendant Lewis's Memorandum of Law [110], p. 7.[1] "If it were available through other means, I assume that the government would have obtained it in lieu of its current efforts." United States v. Barner, 2012 WL 2990033,*3 (W.D.N.Y. 2012). Nor do I have any reason to question the representations in the DNA Analysis Reports that "[k]nown buccal specimens are required for further comparison". [105-1], p. 2 of 2; [105-2], p. 2 of 3.

---

[1] Defendant Lewis argues that "courts in this district have required that the Government make a showing of what types of searching have already been done and provide an explanation of safeguards with respect to a defendant's personal information that will be given to any compelled production of DNA evidence. *See, e.g.,* United States v. Jennifer Passeck, 16-cr-06037 (W.D.N.Y. 2016)". Defendant Lewis's Memorandum of Law [110], p. 6. However, in Passeck, the case was resolved by plea before a decision on the motion to strike the DNA profiling condition of pretrial release was issued, and defendant cites no other cases in support of his argument.

## CONCLUSION

For these reasons, the government's motion [105] is granted. Defendants Lewis and Shine shall provide buccal samples to law enforcement as directed. These swabs shall be used for the sole purpose of comparing defendants' DNA to the DNA recovered from the items that they are alleged to have possessed.

Dated: March 12, 2018

<u>/s/ Jeremiah J. McCarthy</u>
JEREMIAH J. MCCARTHY
United States Magistrate Judge