UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case #17-CV-28-FPG

DECISION AND ORDER

VALENTINO SHINE, SR.,

                Defendant.

## INTRODUCTION

On December 29, 2016, Defendant Valentino Shine, Sr., was arrested based on a criminal complaint alleging that Shine unlawfully possessed crack cocaine with the intent to distribute it. *See* ECF Nos. 1, 2. At his initial appearance, United States Magistrate Judge Jeremiah J. McCarthy detained Shine pending a detention hearing. *See* ECF No. 2.

Judge McCarthy held Shine's detention hearing on January 4 and 10, 2017, found Shine was a flight risk and that there was no condition or combination of conditions to assure the safety of the community, and remanded Shine to custody pending trial. *See* ECF Nos. 4, 8.

The Grand Jury returned a superseding indictment on May 17, 2017, charging Shine with ten counts of various crimes involving drug and sex trafficking. *See* ECF No. 58.

Thereafter, Shine, who is proceeding pro se with standby counsel, *see* ECF No. 83, filed six motions seeking to dismiss the case against him based on various theories. *See* ECF Nos. 89, 95, 130, 162, 165, 182. The two most recent motions seek to dismiss the Superseding Indictment for violations of Shine's speedy trial rights under the Sixth Amendment and the Speedy Trial Act. *See* ECF Nos. 165, 182.

Judge McCarthy issued two Reports and Recommendations (R&Rs) on four of Shine's motions. The R&R at ECF No. 149 analyzes Shine's Motions at ECF Nos. 89, 95, and 130, while the R&R at ECF No. 181 analyzes Shine's Motion at ECF No. 162. I unreferred Shine's Motions at ECF Nos. 165 and 182 and will consider them without an R&R.

Finally, the Government moved for an order directing Shine to comply with the Court's Orders and the Federal Rules of Criminal Procedure. *See* ECF No. 179. I also unreferred that motion and will consider it without an R&R.

All of these Motions and the R&Rs are currently before the Court.

## DISCUSSION

**I.  The R&Rs**

A district court reviews those portions of an R&R to which a party has timely objected de novo. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R, or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009) (citing *Cullen v. United States*, 194 F.3d 401, 405-07 (2d Cir. 1999)); *see also* Fed. R. Crim. P. 59(b)(2); Loc. R. Crim. P. 59(c)(2) ("Written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority.").

After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed. R. Crim. P. 59(b)(3).

Here, although Shine filed a motion for an extension of time to object to Judge McCarthy's R&R at ECF No. 149, *see* ECF No. 159, he has not filed any objections to Judge McCarthy's

R&Rs. The Court is left to conclude that Shine was aware of the R&Rs and declined to object to them. The Court has, therefore, reviewed the R&Rs in their entirety and finds no clear error in them. Consequently, the Court ADOPTS Judge McCarthy's R&Rs in full and Shine's Motions, ECF Nos. 89, 95, 130, 162, are DENIED.

## II. The Speedy Trial Motions

Shine filed two additional Motions which claim that his rights guaranteed under "Criminal Procedure Law 30.30"[1] and the Speedy Trial Act are being violated. Because the Court must construe pro se submissions liberally, it interprets these Motions as Motions to Dismiss the Superseding Indictment for a violation of Shine's speedy trial rights guaranteed under the Sixth Amendment and the Speedy Trial Act.

### A. The Sixth Amendment

The Sixth Amendment instructs that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Pursuant to that guarantee, Defendant claims that the duration of his current pretrial incarceration has violated his constitutional right to a speedy trial.

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court identified four factors a court must consider for speedy trial claims: (1) "[l]ength of delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant." *Id.* at 530. Upon review of these factors, Defendant's Sixth Amendment claim fails.

#### i. Length of Delay

The first factor—length of delay—has two roles: a "triggering mechanism" and a factor a court must consider. *See id.*; *see also Doggett v. United States*, 505 U.S. 647, 651-52 (1992);

---

[1] N.Y. Crim. Proc. § 30.30 delineates time limits for when state prosecutors must be ready for trial in various contexts.

*United States v. Moreno*, 789 F.3d 72, 82 n.10 (2d Cir. 2015). In the latter role, the Court analyzes "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *See Doggett*, 505 U.S. at 652; *see also Moreno*, 789 F.3d at 82 n.10. In both of these roles, there is no bright line delineating what length of delay is acceptable and what is not; in fact, a court must consider both the seriousness and complexity of the alleged crimes. *See Barker*, 470 U.S. at 530-31 (contrasting the delay permitted "for an ordinary street crime" with the greater delay tolerable "for a serious, complex conspiracy charge"); *see also United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012) (reasoning that a delay "of less than 22 months" was "understandable given the presence of multiple defendants, the large number of allegations and the complexity of the racketeering case").

Here, the length of delay triggers further analysis. Courts have generally deemed delay "approach[ing] one year" sufficient to trigger a *Barker* analysis. *See Doggett*, 505 U.S. at 652 n.1. Currently, Shine has been incarcerated for just over 19 months, more than sufficient to trigger the *Barker* analysis.

The factor, however, is neutral. Shine has been incarcerated for only seven months beyond the 12 months needed to trigger analysis. Moreover, this case includes multiple Defendants and a fifteen-count Superseding Indictment that alleges two separate drug and sex trafficking conspiracies. *See, e.g.*, *Cain*, 671 F.3d at 296 (assigning a "neutral" weight to the first *Barker* factor in a multi-defendant, complex RICO case); *see also United States v. Alvarez*, 541 F. App'x 80, 84 (2d Cir. 2013) (summary order) (weighing the nearly 29-month delay "only modestly" in the defendant's favor "given the nature of th[e] conspiracy prosecution, with multiple defendants, allegations spanning multiple years and states, and voluminous discovery, including thousands of intercepted phone calls (many in Spanish)").

### ii. Reason for Delay

The Second Circuit has observed that the reason-for-delay factor "is often critical"—but not dispositive—in the Barker analysis. *Moreno*, 789 F.3d at 79. The *Barker* Court differentiated between three types of delay: (1) deliberate; (2) neutral; and (3) valid. *See Barker*, 407 U.S. at 531. Each type of delay is assigned a different weight under the *Barker* analysis. *Id.* Deliberate attempts to hamper the defense weigh heavily against the Government. *Id.* Neutral factors, like "negligence and overcrowded courts," weigh against the Government, but not as heavily. *Id.* (reasoning that "the ultimate responsibility for such circumstances must rest with the [G]overnment rather than with the defendant"). "Valid reason[s], such as a missing witness," justify the corresponding delay and do not weigh against any party. *See id.*; *United States v. Tigano*, 880 F.3d 602, 612 (2d Cir. 2018).

Here, the reason for the delay weighs, at most, only slightly against the Government. There is no evidence that the Government deliberately attempted to cause any delay. To the contrary, a large portion of the delay appears to be attributable to motion practice by Shine and his co-defendants, many of whom requested extensions of time for their pretrial motions. *See, e.g.*, *United States v. Holley*, 638 F. App'x 93, 96 (2d Cir. 2016) (summary order) (contrasting delay created by "bad faith or negligence on the part of the [G]overnment" with delay "attributable to motion practice by [the defendant] and his co-defendant"). At most, the Court's periods of consideration and resolving other matters—including issues with co-defendants—comprise some combination of "neutral" and "valid" delay that weighs only slightly against the Government.

### iii. Shine's Assertion of His Right

A defendant's assertion of his speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32.

The *Barker* Court stressed that "failure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial." *Id.* at 532.

Shine did not assert his right to a speedy trial until he filed his first speedy trial motion—nearly 17 months after he was initially detained—which weighs heavily against him. Moreover, since first asserting his speedy trial right, Defendant filed another motion that requires the Court's consideration. *See* ECF Nos. 165, 182.

### iv. Prejudice to Shine

The analysis of prejudice to the defendant should be conducted "in the light of the interests" that the speedy trial right protects: (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety and concern of the accused"; and (3) "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. In *Barker*, the Court instructed that the potential impairment of the defense is "most serious . . . because the inability of a defendant to prepare his case skews the fairness of the entire system." *Id.*

#### a. Prevent Oppressive Pretrial Incarceration

Shine provides no details regarding the conditions at the jail in which he is housed. As a result, the instant facts do not present any uniquely oppressive circumstances to be afforded additional weight, short of the general impact of extended pretrial incarceration in a local jail.

#### b. Minimize Anxiety and Concern to Accused

Shine also provides no explanation of the anxieties and concerns resulting from his pretrial incarceration. While Defendant's general concerns fall within the second interest to be protected, given the lack of explanation, they do not appear to be significantly greater than those that any defendant incarcerated might suffer.

### c. Limit Possibility that Defense Will Be Impaired

Shine has pointed to no evidence that Defendant's defense has been impaired by the delay. As the *Barker* Court made clear, and as the Second Circuit has echoed, the third interest—impairment of the defense—remains the most serious in the analysis of prejudice. *See Barker*, 407 U.S. at 532; *see also, e.g.*, *Moreno*, 789 F.3d at 81.

As the *Doggett* Court explained, the potential prejudice to the defense—while, at times, difficult to identify—"increases with the length of delay." *See Doggett*, 505 U.S. at 655–56. Considering this interest in light of the first two, the overall prejudice factor does not carry much weight in Defendant's favor.

### v. Balancing the Factors

In sum, the second and fourth *Barker* factors weigh slightly against the Government, but the first is neutral and the third weighs definitively against Shine. Taking those weights into consideration, the Court finds no violation of Shine's constitutional right to a speedy trial. Accordingly, his Sixth Amendment Motion is DENIED.

### B. The Speedy Trial Act

Shine also argues that the Government violated the Speedy Trial Act (STA). The Act requires a defendant's trial to commence "within seventy days from the filing date" of the indictment. 18 U.S.C. § 3161(c)(1). However, the Act allows courts to exclude time periods from the 70-day calculation for a variety of reasons. *Id.* § 3161(h)(1)–(8).

Although the period between Shine's indictment and now has exceeded 70 days, most of this period is properly excludable from STA calculations. As relevant here, the STA allows for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." *Id.* §

3161(h)(6). In other words, courts may impute delays requested by co-defendants to all defendants. Additionally, the filing of pretrial motions tolls the speedy trial clock. *Id.* § 3161(h)(1)(D). Finally, a catch-all "ends of justice" speedy trial continuance applies if a court finds that the ends of justice in granting the continuance "outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). Notably, the STA "does not include the defendant's consent among the factors a court must consider in weighing whether the ends of justice would be served by granting a continuance." *United States v. Lynch*, 726 F.3d 346, 355 (2d Cir. 2013).

All three of these exceptions to the STA explain the delays in Defendant's case. *See, e.g.*, ECF Nos. 2, 4, 11, 16, 25, 39, 48, 50, 52, 66-67, 72, 74, 77, 81-83, 89, 95, 100, 104, 124, 130, 159, 162, 166, 170-71, 173, 182, 199-203. Shine has not objected to any of the Court's STA exclusions. Additionally, he assented in all of his co-defendants' numerous requests for adjournments and extensions to file motions. Defendant himself moved for adjournments and extensions on multiple occasions. ECF Nos. 50, 74, 81, 100, 159. Although no trial has been scheduled, any such date would fall well within the STA's 70-day period. Accordingly, Shine's STA Motion is DENIED.

### III. The Government's Motion

Finally, the Government moves the Court to issue an order directing Shine to comply with the Federal Rules of Criminal Procedure and court orders referring the case to Judge McCarthy for pretrial proceedings, and to admonish Shine for numerous and repetitive motions to dismiss. *See* ECF No. 179. In response, Shine filed a letter stating, among other things, "I'm not responsible for conducting myself or my case as a licensed attorney. I am free to proceed as I see fit as a sovereign citizen." ECF No. 188.

Regardless of how Shine views himself, he is required to comply with the Federal Rules of Criminal Procedure and all orders issued by this Court. *See* Fed. R. Crim. P. 1(a)(1) ("These rules govern the procedure in all criminal proceedings in the United States district courts[.]"); *see also* Loc. R. Crim. P. (1)(b) ("[P]ro se litigants are expected to comply with the most current Rules, plans, and procedures."). Because these requirements are in place, the Court sees no need to issue an additional order directing Shine to comply. Consequently, the Government's Motion is DENIED. The Court notes, however, that further misconduct by Shine may result in sanctions. Additionally, the Court also notes that, given Shine's invocation of his right to a speedy trial, it must consider all motions filed by Shine before the start of trial. Thus, any motions filed in the future may further delay Shine's trial.

## CONCLUSION

For the reasons stated, Judge McCarthy's R&Rs, ECF Nos. 149, 181, are ADOPTED in full, Shine's Motions, ECF Nos. 89, 95, 130, 162, 165, 182, are DENIED, and the Government's Motion to Comply, ECF No. 179, is GRANTED IN PART.

IT IS SO ORDERED.

Dated: August 7, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court