UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                                    **REPORT,**
                                                             **RECOMMENDATION**
                                                             **and ORDER**

v.
                                                             17-CR-00028(FPG)(JJM)

VALENTINO SHINE, SR. and
JESSE LEWIS,

                          Defendants.
_____

            Defendants are collectively charged with various controlled substance, firearms

and sex trafficking violations. Superseding Indictment [58].[1]  Before the court are defendants'

motions to suppress evidence arising from an October 31, 2016 traffic stop, and defendant

Valentino Shine, Sr.'s motion to vacate my February 25, 2019 Text Order [276] and to compel

disclosure of certain DNA evidence [283].[2]  A hearing to address the defendants' suppression

motions [244, 254] was held before me on February 8, 2019 [279], at which Niagara Frontier

Transportation Authority Police Department Officer Shawn McDonell testified. Having reviewed

the parties' post-hearing submissions [289-291, 298, 303] and heard oral argument on April 10,

2019 [299], for the following reasons, defendant Shine's motion [283] is denied, and I

recommend that the motions to suppress [244, 254] be granted.

_____

[1]      Bracketed references are to CM/ECF docket entries.  Unless otherwise indicated, page references
are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2]      Defendants' remaining motions [230, 231, 245] are pending before District Judge Geraci. *See*
December 13, 2018 Text Order [252].

## BACKGROUND

The Superseding Indictment [28] arises in part from Officer McDonell's October 31, 2016 traffic stop of a vehicle occupied by defendants for an alleged violation of New York Vehicle and Traffic Law ("VTL") §375.30. That provision makes it "unlawful for any person to operate a motor vehicle with any object placed or hung in or upon the vehicle, except required or permitted equipment of the vehicle, in such a manner as to obstruct or interfere with the view of the operator through the windshield, or to prevent him from having a clear and full view of the road and condition of traffic behind such vehicle." *See* February 8, 2019 hearing transcript [279], p. 46. The February 8, 2019 evidentiary hearing addressed whether reasonable suspicion existed for the stop. Id., pp. 4-5.

Prior to the stop, Officer McDonell was in his routine patrol area of Ellicott and North Hampton Streets in the City of Buffalo, accompanied by with Andrew Spire, a new recruit who was being field trained. Id., p. 11. While parked on Ellicott Street at North Hampton Street in an area known for narcotics trafficking, Officer McDonell first observed defendants' vehicle, a Ford Explorer, parked behind him on Ellicott Street between Dodge Street and Edna Place. Id., pp. 12-13, 25-27; gov. ex. 1 [272-1] (map of the area). Through his rearview mirror, he observed an individual exit a home in the vicinity of defendants' vehicle, have a conversation with the occupants of the vehicle, and return to the residence with the driver of the vehicle. Id., p. 13. The driver briefly remained in the residence before returning to the vehicle and departing. Id. From these observations, Officer McDonell believed that the two occupants of the vehicle were engaged in drug activity. Id., pp. 13, 27-28. He testified that "[a]s soon as the driver reentered the vehicle and the vehicle proceeded away from where it was parked, I decided I wanted to stop that vehicle", but he did not believe that he had reasonable suspicion to do so at that time. Id., pp. 30,

53, 56, 59. Officer McDonell testified that he intended to follow the defendants' vehicle for as long as it took, in order to find a reason to pull it over. Id., p. 59.

Officer McDonell testified that he had "complete" and "laser" focus on the front of defendants' vehicle while it was parked on Ellicott Street, and that he was able to see inside of the vehicle. Id., pp. 28-29, 57-58. Although the air freshener hanging from the rearview mirror of defendants' vehicle was within his view "[f]rom a distance", he did not specifically take note of it at that time. Id., pp. 29-31, 37-38, 52. He explained that defendants' "activity was what drew my attention, not the objects . . . from the vehicle". Id., p. 53.

After departing Ellicott Street, defendants' vehicle headed toward Main Street via Dodge Street. Id., p. 14; gov. ex. 1 [272-1]. Officer McDonell took North Hampton Street to Main Street, and was eventually able to position his vehicle directly behind defendants' vehicle as it was heading southbound on Main Street in the vicinity of Summer Street. [279], pp. 14, 32; gov. ex. 1 [272-1]. At this point, it was a little before noon, and it was dry and sunny. [279], p. 15.

Officer McDonell testified that while traveling behind defendants' vehicle, he first observed an object approximately four inches long and "maybe" two inches wide hanging from the rearview mirror, which appeared to him to be obstructing the driver's view. Id., pp. 15-16, 52. He relied upon this observation to conduct a traffic stop, but did not initiate the stop immediately in order to find a "safe" location to do so. Id., pp. 16, 53.

Defendant Jesse Lewis, the driver of the vehicle, eventually looked in his rearview mirror, and upon viewing Officer McDonell's marked police vehicle, made a "quick" left turn into the Anchor Bar parking lot. Id., pp. 17, 47. Officer McDonell followed defendants' vehicle into the parking lot and turned on his emergency lights. Id. With his body

cam activated (def. ex. B), Officer McDonell approached defendants' vehicle. [279], p. 17.  Until

he approached the vehicle, he did not know that the item he observed hanging from the rearview

mirror was an air freshener.  Id., p. 48.

       The body cam captured the position of the air freshener and tint on the windows

of defendants' vehicle.  Def. exs. B, L [272-5] and gov. ex. 2 [272-2].  Officer McDonell

acknowledged that in viewing a screenshot taken from his body cam video of the rear of

defendants' vehicle (def. ex. K [272-4],) one is unable to see inside of the vehicle through the

rear window. [279], pp. 36-37.  However, he explained that the photograph, which was taken

from a different vantage point and direction from where he initially observed the object hanging

from defendants' rearview mirror, "appear[ed] to be darkened" and did not accurately depict the

lighting conditions that day.  Id., pp. 51, 67-68.

       Officer McDonell described the air freshener as being standard size, unaltered,

and only partially hanging below the rearview mirror of defendant's vehicle. Id., pp. 39, 49.

While he agreed that having an air freshener obstructing a driver's view was not a serious crime,

he estimated that he stopped 5% of the vehicles he observed with an air freshener.  Id., pp. 39-40.

Officer McDonell issued defendant Lewis a ticket for an obstructed view in violation of VTL

§375.30, since the air freshener "was a solid object that you can't see through that's in view

through the windshield of the driver".  Id., pp. 38, 44.  However, he admitted that the air

freshener did not obstruct defendant Lewis' views through the rear window or over the steering

wheel, and that Lewis would be able to see the vehicles directly to the right and beyond the right

front quarter panel of his vehicle.  Id., pp. 39, 42.  According to Officer McDonell, VTL §375.30

prohibits "anything that's not factory issued" from being hung from the rearview mirror. Id., p.

48.

# DISCUSSION

**A.      Defendants' Motions to Suppress**

**1.      Do Defendants' Have Standing to Contest the Stop?**

For the first time at oral argument, the government contested defendants' standing to challenge the stop of the vehicle, relying on the Second Circuit's recent decision in <u>United States v. Lyle</u>, 919 F.3d 716, 730 (2d Cir. 2019), which held that a driver of a "rental car both without a license and without authorization" lacked a reasonable expectation of privacy.  Like the defendant in <u>Lyle</u>, defendant Lewis was operating the vehicle without a license. *See* [261-4], p. 2 of 4 (CM/ECF).  However, the similarities end there.

As defendant Lewis argues, "the critical fact relied upon in <u>Lyle</u> to determine that defendant did not have a reasonable expectation of privacy" was that he was operating a rental vehicle, a fact "not present in this case". Defendant Lewis's Post Argument Memorandum of Law [303], p. 3.  <u>Lyle</u> also addressed the distinct issue of standing to contest the search of a vehicle (919 F.3d at 727), rather than standing to contest the constitutionality of a traffic stop. *See* <u>United States v. Shefler</u>, 2009 WL 102819, *3 (N.D.N.Y. 2009) ("since an automobile stop may result in a Fourth Amendment 'seizure' of a car and the passengers alike, a passenger may have standing to challenge the seizure of the vehicle even if he or she lacks standing to challenge a search").  Therefore, <u>Lyle</u> fails to establish that defendants lack standing to contest the October 31, 2016 traffic stop.

2.      **Was there Reasonable Suspicion for the Traffic Stop?**

"[T]raffic stops are reasonable when they arise from the reasonable suspicion of a traffic violation", even if the traffic violation is a minor one. United States v. Stewart, 551 F.3d 187, 191-92 (2d Cir. 2009). "The Government bears the burden of proving, by a preponderance of the evidence, that reasonable suspicion existed for a stop." United States v. Gomez, 199 F. Supp. 3d 728, 741 (S.D.N.Y. 2016), aff'd, 751 Fed. App'x 63 (2d Cir. 2018) (Summary Order). Reasonable suspicion is assessed at the time of the stop; "[a]ny events that occur after a stop is effectuated cannot contribute to the analysis of whether there was reasonable suspicion to warrant the stop in the first instance". United States v. Freeman, 735 F.3d 92, 96 (2d Cir. 2013).

"Whether . . . reasonable suspicion exists is an objective inquiry; the 'actual motivations of the individual officers involved' in the stop 'play no role' in the analysis." Holeman v. City of New London, 425 F.3d 184, 190 (2d Cir. 2005) (*quoting* Whren v. United States, 517 U.S. 806, 813 (1996)); United States v. Dhinsa, 171 F.3d 721, 724–25 (2d Cir. 1999) ("an officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance.").

"The existence of reasonable suspicion is not a purely legal issue; rather, it is a mixed question of law and fact dependent on the totality of the circumstances." United States v. Gomez, 877 F.3d 76, 92 (2d Cir. 2017). "While 'reasonable suspicion' is a less demanding standard than probable cause . . . the Fourth Amendment requires at least a minimal level of objective justification for making the stop. . . . The officer must be able to articulate more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity." Illinois v. Wardlow, 528

U.S. 119, 123–24 (2000); Freeman, 735 at 96. The court "cannot merely defer to police officers' judgment in assessing reasonable suspicion"; it "must view the totality of the circumstances through the eyes of a reasonable and cautious police officer on the scene". United States v. Bailey, 743 F.3d 322, 332 (2d Cir. 2014). *See also* Terry v. Ohio, 392 U.S. 1, 21 (1968) ("[t]he scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular . . . seizure in light of the particular circumstances").

As defendants argue, not every item suspended from a vehicle's rearview mirror constitutes a violation of VTL §375.30. Defendant Shine's Post Hearing Submission [291], p. 5 of 8 (CM/ECF). *See* People v. Diodato, 4 Misc. 3d 127(A), *1, 791 N.Y.S.2d 871 (App. Term 2d Dep't. 2004) ("[t]he proof failed to establish that the object suspended from defendant's rear-view mirror 'obstructe[d] or interfere[d] with' defendant's view through the windshield or with a 'clear and full view of the road and condition of traffic behind'"); James M. Rose, New York Vehicle and Traffic Law § 20:17 (2d ed.) ("[a] prosecution under [VTL §375.30] requires proof not just that an object had the potential to obstruct the driver's view but that it actually did obstruct or interfere with the driver's view").

The plain language of the statute makes clear that the object must be placed "in such a manner as to obstruct or interfere with the view of the operator through the windshield, or to prevent him from having a clear and full view of the road and condition of traffic behind such vehicle". VTL §375.30. Even if Officer McDonell mistakenly believed that the air freshener posed such an obstruction, that mistake, so long as reasonable, would not undermine an otherwise valid stop. *See* United States v. Jenkins, 452 F.3d 207, 212 (2d Cir. 2006) ("[t]he

constitutional validity of a stop is not undermined simply because the officers who made the stop were mistaken about relevant facts . . . . [B]ecause the officers had a reasonable but mistaken belief that the SUV lacked license plates, stopping the vehicle was 'justified at its inception'"). [3]

Thus, "in order for the stop to be valid, the Government must show that Officer McDonell reasonably suspected the air freshener hanging from the rearview mirror . . . interfered with Mr. Lewis' view through the windshield of the vehicle".  Defendant Lewis's Post-Hearing Memorandum of Law [289], pp. 5-6.  Resolution of that issue turns on his credibility, and defendants argue that "[t]he statute itself and the factual and photographic evidence in this case tend to make [Officer McDonell's] testimony not credible".  Defendant Shine's Post-Hearing Memorandum of Law [291], p. 6 of 8 (CM/ECF).

"It is within the province of the district court as the trier of fact to decide whose testimony should be credited . . . . And as trier of fact, the judge is 'entitled, just as a jury would be . . . to believe some parts and disbelieve other parts of the testimony of any given witness.'" Krist v. Kolombos Rest. Inc., 688 F.3d 89, 95 (2d Cir. 2012).  An adverse credibility determination is "appropriately based upon inconsistent statements, contradictory evidence, and inherently improbable testimony".  Diallo v. I.N.S., 232 F.3d 279, 287 88 (2d Cir. 2000).  "While police officers are certainly deserving of respect, 'they should be treated like any other witness that took the stand. You don't accept their testimony because they're police officers and you

---

[3]      Although not raised by defendants, Officer McDonell appeared to lack a proper understanding of what VTL §375.30 prohibits.  According to him, VTL §375.30 prohibits "anything that's not factory issued" from being hung from the rearview mirror ([279], p. 48) - an understanding inconsistent with the plain wording of the statute.  "While an officer's mistake of fact would not undermine the legality of an otherwise valid stop . . . [a] mistake of law cannot provide objectively reasonable grounds for suspicion".  United States v. Williams, 2011 WL 5843475, *5 (S.D.N.Y. 2011).

shouldn't reject their testimony because they're police officers.'" United States v. Lawson, 961 F.

Supp. 2d 496, 504 (W.D.N.Y. 2013).

        Having personally observed Officer McDonell's testimony, several factors

demonstrate that it was not entirely credible. First, there is ample contradictory evidence

rendering it improbable that Officer McDonell had reasonable suspicion of a violation of VTL

§375.30. The photographs from his body camera (gov. ex. 2 [272-2]; def. ex. L [272-5])

demonstrate that the air freshener was hung only partially below the rearview mirror in a

standard position. Officer McDonell acknowledged that the air freshener was not altered in

anyway, did not obstruct the rearview mirror or side view, and permitted the driver to see

directly in front of him over the steering wheel and beyond the right front quarter panel of the

vehicle. [279], pp. 39, 41-42. The unremarkable nature of both the air freshener and its

placement distinguishes this case from those concluding that air fresheners or other items

hanging from a vehicle's rearview mirror provided reasonable suspicion or probable cause of a

violation of VTL §375.30. See, e.g., United States v. Ponce, 519 Fed. App'x 35, 36 (2d Cir.

2013) (Summary Order) ("the officers reasonably believed that the *numerous air fresheners*

*hanging from the rearview mirror and in each of the side windows* constituted an obstruction in

violation of N.Y. Vehicle & Traffic Law § 375.30" (emphasis added)); Deveines v. New York

State Department of Motor Vehicles Appeals Board, 136 A.D.3d 1383, 1384–85 (4th Dept.

2016) ("the officer had probable cause to believe that petitioner was violating Vehicle and

Traffic Law § 375(30) inasmuch as the officer . . . observed *objects* measuring approximately

four inches wide - later identified as air fresheners - *hanging three or four inches below the*

*rearview mirror*, and that those objects may have obstructed petitioner's view through the

windshield" (emphasis added)); People v. Bookman, 131 A.D.3d 1258, 1260 (2d Dep't. 2015),

aff'd, 28 N.Y.3d 967 (2016) (where the officer observed an "ornamental sandal on a string and a necklace hanging from the [vehicle's] rearview mirror" that was approximately "four to five inches long" and two inches in width "hanging about *four to five inches beneath the rearview mirror*", he had reasonable cause to believe that the sandal was hung in such a manner to constitute a violation of  VTL §375(30) (emphasis added)); People v. Singleton, 135 A.D.3d 1165, 1168 (3d Dep't. 2016) ("County Court credited the suppression hearing testimony of the officer that he stopped the vehicle after observing *a large object*, which he later identified as an air freshener, hanging from the rear view mirror in a manner that could have prevented the driver from seeing a vehicle through the windshield" (emphasis added)).

   Coupled with the conventional size and placement of the air freshener, Officer McDonell acknowledged that the photograph of the rear of defendants' vehicle facing eastward in the Anchor Bar parking lot depicts it with tinted windows preventing any observations through the rear window. [279], pp. 35-36, 51-52, 67-68.  Even if the lighting differed as Officer McDonell was traveling southbound on Main Street directly behind defendants' vehicle (id., p. 67-68), the tint on the rear window of the vehicle makes it unlikely that he would have been able to sufficiently view and determine that there was any obstruction, especially a four-by-two inch air freshener hanging only partially below the rearview mirror.

   Moreover, while Officer McDonell contends that the air freshener posed an obstruction, he conceded that he earlier had a clear view of defendants' windshield through his rear view mirror, but did not observe any traffic violation at that point.  Id., pp. 29-30.  Though his observations at that point may have been largely focused on defendants' conduct, rather than in finding a basis to stop the vehicle, he acknowledged that "as soon as the driver reentered the vehicle and the vehicle proceeded away from where it was parked" he had decided to pull the

vehicle over and was looking for a reason to do so. [279], p. 53.  Thus, it is improbable that

Officer McDonell, admittedly looking for a reason to stop defendants' vehicle, would not have

immediately done so upon observing the obstruction.  Instead, he testified that he was waiting for

a safe location to stop the vehicle - yet offered no explanation as to why he could not have

stopped defendants' vehicle on Main Street, rather than waiting until defendant Lewis turned into

the Anchor Bar parking lot.

        Moreover, Officer McDonell has provided inconsistent testimony concerning the

reason for the stop. When specifically asked before the grand jury to "[d]escribe how the stop

occurred", he never mentioned defendant Lewis's allegedly obstructed view as the reason for the

stop, even though he now claims that it was "the primary basis for [his] lawful authority to stop"

defendants' vehicle. Def. ex. D [272-3], pp. 3-4; [279], p. 24. While he testified that the purpose

of his grand jury testimony was only to provide "the indicators that aroused [his] suspicion that

there was drug activity involved" ([279], pp. 19-20), it is curious that his response to a question

specifically about the circumstances of the stop would not have included the allegedly lawful

ground for the stop, especially since his response detailed other matters entirely unrelated to the

suspected drug activity - *e.g.*, traveling behind defendants' vehicle traveling southbound on Main

Street and making an immediate left turn into the Anchor Bar parking lot.  Def. ex. D [272-3],

pp. 3-4.

        Viewing the record objectively through the eyes of a reasonable and cautious

police officer on the scene, I conclude that the government has failed to demonstrate by a

preponderance of the credible evidence that there was reasonable suspicion for the stop.[4]

---

[4]     Defendant Shine also argues that Officer McDonell impermissibly extended the duration and
scope of a permissible traffic stop.  Defendant Shine's Post Hearing Submission [291], p. 7 of 8
(CM/ECF).  That argument is untimely.  The sole issue raised in defendants' suppression motions was

### 3.    Is Suppression Warranted?

"'The fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies.'" Government's Post-Hearing Memorandum of Law [290], p. 11 (*quoting* Herring v. United States, 555 U.S. 135, 140 (2009)). *See* United States v. Julius, 610 F.3d 60, 66 (2d Cir. 2010). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. . . . [T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct." Herring, 555 U.S. at 144. It is the government's "burden [to prove] that the exclusionary rule is not 'a proper remedy for the violation' of the Fourth Amendment". *See* United States v. Anderson, 2012 WL 3535771, *6 (W.D.N.Y.), adopted 2012 WL 3528971 (W.D.N.Y. 2012).

As Officer McDonell recognized, he is permitted to "stop a vehicle in New York State that's in violation of any article of the [VTL]". [279], p. 21. That requirement has long been well settled and "[p]olice officers are presumed to know the law governing their conduct". Pritzker v. City of Hudson, 26 F.Supp.2d 433, 443 (N.D.N.Y.1998). Since no objectively reasonable officer could believe the stop to be valid in the absence of objectively reasonable suspicion of a traffic violation, I conclude that the evidence arising from the stop is subject to suppression, and recommend that defendants' suppression motions be granted. *See* United States v. Barclay, 2011 WL 1595065, *5 n.5 (E.D. Mich.), adopted, 2011 WL 1627072 (E.D. Mich. 2011) ("no objectively reasonable officer could believe a search to be valid where there is no objectively reasonable suspicion. . . . Accordingly, if the Court concludes that the officers lacked

---

whether there was reasonable suspicion for the stop [244, 254] and all counsel agreed at the outset of the evidentiary hearing that it was limited to that question [279], pp. 4-5.

reasonable suspicion to stop the van, the Court should conclude that the evidence is subject to suppression notwithstanding <u>Herring</u>").

**B.      Defendant Shine's Motion to Vacate my February 25, 2019 Text Order [276] and Compel disclosure of Certain DNA Evidence**

The circumstances leading to defendant Shine's motion are fully set forth in my February 25, 2019 Text Order: "Before the court is defendant Shine's pretrial motion for DNA testing materials. Stachowski Affirmation [249], paragraphs 6-16. After addressing this issue with the parties at the January 23 and February 8, 2019 proceedings, I directed that "[b]y February 22, 2019 defendant Shine shall identify which portions of his request for DNA testing materials . . . remain in dispute, *failing which I will assume that the issue is resolved*". February 8, 2019 Text Order [271] (emphasis added). Since defendant Shine has failed to identify any portion of his pretrial motion for DNA testing materials that remains in dispute, the motion (Stachowski Affirmation [249], paragraphs 6-16) is denied as moot" [276] (emphasis in original).

Defendant Shine now moves to vacate the denial of his motion for DNA testing materials by alleging that he was unable to comply with the February 22, 2019 deadline because he was confronted with an "appellate matter, a rash of court appearances and other commitments that foreclosed [his] ability to have sufficient time to write the papers that were necessary to inform the court as to what [was] needed". Stachowski Affirmation [283], ¶5.  He contends that the government still  "has not provided the forensic biology case files of the gun" (<u>id</u>., ¶7), and seeks the following information:

"a. The complete laboratory case file;

b. The complete STRmix output report;

c. The STRmix user's manual;

d. The model maker/input data;

e. The laboratory's SOP's;

f. The STRmix validation studies;

g. The STRmix extended output files;

h. The electric raw data;

i. The software source code;

j. Proficiency tests; and

k. Laboratory audit trail." <u>Id</u>., ¶7.

The government responds that defendant Shine fails to demonstrate good cause for failing to meet the February 22, 2019 deadline and that the motion is otherwise moot because it has provided all required discovery. Government's Response [292], pp. 3-8. I agree. Where a party fails to meet the deadline for a Fed. R. Crim. P. ("Rule") 16 discovery motion, Rule 12(c)(3) permits the court to consider an untimely discovery motion upon a showing of "good cause". Although it is unclear whether Rule 12(c)(3) applies to the February 22, 2019 deadline, it remains true that "[a] district court does not abuse its discretion when it denies a motion if the mover failed to comply with the established pretrial procedures. . . . [C]ourts have a legitimate interest in the enforcement of scheduling deadlines in order to manage pending cases and to retain the credibility of deadlines in future cases". <u>United States v. Hawkins</u>, 2010 WL 1434192, *1 (W.D. La. 2010). In any event, whether adjudged by the "good cause" standard of Rule 12(c)(3) or a lesser standard, I conclude that defendant Shine has failed to provide a sufficient reason to his excuse his failure to comply with the February 22, 2019 deadline.

Moreover, even if he had timely complied with the deadline (or could establish an excusable basis for his failure to do so), I would deny his motion to compel the DNA testing materials as moot. The requested discovery appears to relate to DNA recovered from a firearm. According to the government, there are two firearms at issue: a revolver located in defendant Lewis's residence and a pistol recovered in 2005. Government's Response [292], pp. 5-6. The government states that both defendants were excluded as contributors to the DNA recovered from the firearm located in defendant Lewis's residence and that it does not intend to use the firearm recovered in 2005 containing defendant Shine's DNA in its case in chief. Id. See United States v. Johns, 336 F.Supp.2d 411, 424 (M.D.Pa. 2004) ("[t]he court is entitled to rely on the representations of counsel, as officers of the court"). Defendant Shine fails to contest these representations or to demonstrate why additional DNA testing evidence from these firearms is necessary to his defense.

In addition, defendant Shine also seeks a Frye hearing[5] to determine the admissibility of the DNA testing in this case. Stachowski Affirmation [283], ¶¶3, 9. Since "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . and put flesh on its bones", this portion of the motion is denied, without prejudice. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); Flores v. Tryon, 2017 WL 3705124, *3 n. 4 (W.D.N.Y. 2017) ("it is not this Court's responsibility to raise and make counsel's arguments for them").

---

[5]    A Frye hearing is used by the New York State courts to determine the admissibility of expert testimony utilizing the "general acceptance" standard set forth in Frye v. United States, 293 F. 1013 (D.C. Cir. 1923). That standard has been replaced in the federal courts by Daubert v. United States, 509 U.S. 579 (1993).

**CONCLUSION**

For these reasons, defendant Shine's motion to vacate [283] is denied, and I recommend that defendants' motions to suppress [244, 254] be granted. Unless otherwise ordered by District Judge Frank P. Geraci, Jr., any objections to this Report, Recommendation and Order must be filed with the clerk of this court by May 17, 2019. Any requests for extension of this deadline must be made to Judge Geraci. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not

raised to the Magistrate Judge".  Failure to comply with these provisions may result in the

district judge's refusal to consider the objection.

Dated:  May 3, 2019

/s/ Jeremiah J. McCarthy<br>
JEREMIAH J. MCCARTHY<br>
United States Magistrate Judge