UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case # 17-CR-28-FPG-JJM

DECISION AND ORDER

VALENTINO SHINE, SR., et al.,
                        Defendants.

## INTRODUCTION

Before the Court are two matters. First, the government objects to Magistrate Judge Jeremiah J. McCarthy's Report and Recommendation (R&R), in which he granted the motions to suppress filed by Defendants Valentino Shine, Sr., and Jesse Lewis. *See* ECF Nos. 308, 313. Second, Lewis moves to sever under Federal Rule of Criminal Procedure 14. ECF No. 245. The Court resolves both matters in this omnibus order.

## DISCUSSION

### I. Motions to Suppress

In December 2018, Defendants Shine and Lewis filed motions to suppress challenging the constitutionality of a traffic stop that occurred on October 31, 2016. ECF Nos. 244, 254. On May 3, 2019, after a hearing, Judge McCarthy issued a R&R granting the motions. ECF No. 308. On May 17, 2019, the government filed its objection to the R&R. ECF No. 313. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court has conducted a *de novo* review of Judge McCarthy's rulings and considered the parties' submissions to date. For the reasons stated below, the Court adopts Judge McCarthy's R&R granting Defendants' motions to suppress.

#### a. Legal Standard

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R, or when

the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009).

After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). In addition, "[t]he Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings." *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013); *see also Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008).

b. **Background**

The following facts are taken from the record. Shine and Lewis are alleged to have been involved in a narcotics conspiracy. *See generally* ECF No. 58. Some of the evidence supporting those charges was obtained as a result of an October 31, 2016 traffic stop performed by Officer Shawn McDonnell of the Niagara Frontier Transportation Authority Police Department. The central dispute between the parties is whether Officer McDonnell had reasonable suspicion to conduct the stop.

At the evidentiary hearing, Officer McDonnell testified that he was in his "routine patrol area of Ellicott and North Hampton Streets in the City of Buffalo, accompanied by [] Andrew Spire, a new recruit who was being field trained." ECF No. 308 at 2. The relevant events occurred "a little before noon"; the day was "dry and sunny." *Id.* at 3.

While parked on Ellicott Street, Officer McDonnell observed a green Ford Explorer through his rearview mirror. ECF No. 279 at 13. The Explorer was parked behind him on Ellicott Street. A driver and a passenger—later identified as Lewis and Shine, respectively—were in the Explorer. Officer McDonnell then "observed an individual exit a home in the vicinity of

[D]efendants' vehicle, have a conversation with the occupants of the vehicle, and return to the residence" with Lewis. ECF No. 308 at 2. Lewis exited the residence a few minutes later, got back into the Explorer, and drove away. ECF No. 279 at 13. At that point, Officer McDonnell suspected that Defendants were engaged in drug activity, but he did not believe he had enough evidence to pull them over. *Id.* at 13, 30. Officer McDonnell decided to follow Defendants' vehicle. He testified that he "intended to follow the [] vehicle for as long as it took, in order to find a reason to pull it over." ECF No. 308 at 3.

Officer McDonnell was able to get directly behind the Explorer. It was at this point that he first saw "an object hanging from the rearview mirror of the [Explorer]." ECF No. 279 at 15. He estimated that it was "approximately 4 inches long" and "maybe 2 inches wide." *Id.* In Officer McDonnell's opinion, the object appeared to be obstructing the driver's view. *Id.*

Based on the obstructed view, Officer McDonnell decided to stop Defendants' vehicle. *Id.* at 16. Under New York Vehicle & Traffic Law § 375(30), it is unlawful for any person to "operate a motor vehicle with any object placed or hung in or upon the vehicle . . . in such a manner as to obstruct or interfere with the view of the operator through the windshield, or to prevent him from having a clear and full view of the road."

Before Officer McDonnell activated his vehicle's emergency lights, Lewis appeared to notice the police vehicle and made a left-hand turn into a parking lot. *Id.* at 17. Once Lewis pulled into the parking lot, Officer McDonnell activated the emergency lights. Lewis stopped his vehicle in the back corner of the lot, and Officers McDonnell and Spire exited their vehicle and approached. Officer McDonnell went to the driver's side door and spoke with Lewis. It was at this point that Officer McDonnell determined that the object hanging from the rearview mirror was an air freshener. Lewis did not have a license card with him, and through a DMV check Officer

McDonnell learned that Lewis did not have a driver's license. *Id.* at 18-19. Ultimately, the officers searched Lewis and Shine, as well as the vehicle, discovering drugs in the process. The Ford Explorer was then impounded.

Because it was the basis for the stop, the primary issue at the hearing concerned Officer McDonnell's observation of the air freshener. Judge McCarthy found Officer McDonnell's testimony "not entirely credible" and determined that he had not observed an obstruction before initiating the stop. ECF No. 308 at 7-11. Judge McCarthy identified several considerations that led him to this conclusion.

First, Officer McDonnell's testimony was inconsistent with photographs from his body camera. While he testified that he had seen the air freshener while directly behind the vehicle, the photograph showed that Defendants' vehicle had tinted windows that prevented "any observations through the rear window." *Id.* at 10.

Second, the photographs and testimony established that the air freshener was of "conventional size," was hung "only partially below the rearview mirror," and was otherwise in a "standard position." *Id.* at 9-10. Officer McDonnell conceded that the "air freshener was not altered[,] . . . did not obstruct the rearview mirror or side view, and permitted the driver to see directly in front of him over the steering wheel and beyond the right front quarter panel of the vehicle." *Id.* at 9.

Third, Officer McDonnell testified that he had not observed the air freshener when he first noticed the Explorer in his rearview mirror, from which Judge McCarthy inferred that the object did not, in fact, pose any noticeable obstruction. *Id.* at 10.

Fourth, Judge McCarthy found it "improbable that Officer McDonnell, admittedly looking for a reason to stop [D]efendants' vehicle, would not have immediately done so upon observing

the obstruction [while driving behind the vehicle]." *Id.* at 11. Instead, for some unexplained reason, Officer McDonnell waited until Lewis pulled into a parking lot to stop him, notwithstanding that he could have done so safely prior to that point.

Fifth, Judge McCarthy noted that Officer McDonnell's hearing testimony was inconsistent with his grand jury testimony, insofar as he never mentioned "Lewis's allegedly obstructed view as the reason for the stop, even though he now claims that it was the primary basis for his lawful authority to stop" the vehicle. *Id.* (internal brackets and quotation marks omitted).

Ultimately, Judge McCarthy concluded that, "[v]iewing the record objectively through the eyes of a reasonable and cautious police officer on the scene, . . . the government has failed to demonstrate by a preponderance of credible evidence that there was reasonable suspicion for the stop." *Id.* He therefore suppressed the evidence. *Id.* at 12-13.

c. **Analysis**

The government raises five arguments challenging the R&R.

First, the government contends that the motions to suppress should not have been considered because they were untimely filed. Rule 12(c)(1) of the Federal Rules of Criminal Procedure permits the court to "set a deadline for the parties to make pretrial motions." A court may consider an untimely pretrial motion, including a motion to suppress, if "the party shows good cause." Fed. R. Crim. P. 12(c)(3). The good-cause question turns on whether "the particular ground for suppression pressed later could have been, but was not, advanced prior to [the deadline]." *United States v. Nayyar*, 221 F. Supp. 3d 454, 461 (S.D.N.Y. 2016). Where the grounds for the motion are not discoverable by the defendant until after the deadline, good cause is established. *See, e.g.*, *United States v. Robinson*, 357 F. Supp. 3d 221, 224 (E.D.N.Y. 2019); *United States v. Sanchez*, 813 F. Supp. 241, 249 (S.D.N.Y. 1993). On the other hand, "[a] strategic

decision by counsel not to pursue a claim" or mere "inadvertence of one's attorney" does not constitute good cause. *United States v. Hester*, 674 F. App'x 31, 36 (2d Cir. 2016) (summary order).

The Court is satisfied that the "good cause" standard is met in this case. The parties do not dispute that Defendants did not receive Officer McDonnell's grand jury testimony until November 2018—well beyond the deadline for filing pretrial motions. *See* ECF No. 313 at 1-2 (discussing deadlines). The grand jury testimony suggested that Officer McDonnell had stopped Defendants based on suspected drug activity—rather than on an obstructing air freshener, which was the basis cited in his police report. Indeed, in his grand jury testimony, Officer McDonnell never referenced the air freshener. Granted, as the government argues, Defendants could have raised certain aspects of their argument challenging the justification for the stop even without the grand jury testimony. For example, Defendants previously possessed the photographs and video of the stop, such that they could have contended that the tinted windows prevented Officer McDonnell from seeing the air freshener before he stopped the vehicle. *See* ECF No. 313 at 9. Nevertheless, to challenge the basis of the stop, one would need to call Officer McDonnell's credibility into question, and it was not until Defendants had the grand jury testimony—which revealed inconsistencies in Officer McDonnell's statements and provided far greater context concerning the stop—that they could meaningfully do so. In other words, the late filing of the suppression motions cannot be fairly characterized as the mere "strategic decision" or "inadvertence" of counsel. *Hester*, 674 F. App'x at 36.

Second, the government argues that Judge McCarthy erred when he concluded that Defendants had standing to contest the search of the vehicle. ECF No. 313 at 10-12. The government asserts that Defendants' affidavits are insufficient to establish standing: Lewis states

6

that he was the driver of the vehicle, and Shine avers that he was the passenger, but neither asserts any possessory or property interest in the vehicle or its contents. *See* ECF Nos. 257, 258.

However, as Judge McCarthy noted, there is a distinction between standing to contest the *search* of a vehicle and standing to contest the antecedent *stop* of the vehicle. *See* ECF No. 308 at 5; *see also United States v. Dumas*, 94 F.3d 286, 290 (7th Cir. 1996) ("There is a clear distinction between the privacy interests involved in a search and those involved in a seizure of the person."). Because it constitutes a seizure, "[a] stop implicates personal privacy interests quite distinct from the possessory or property interests implicated by a search." *Dumas*, 94 F.3d at 290. Defendants have standing to challenge the seizure of their persons in the context of a traffic stop regardless of their standing to challenge the subsequent search of the vehicle. Other courts have reached the same conclusion. *See, e.g.*, *id.* ("[W]hether or not he would have had standing to challenge a search of the rented van, [the driver] undoubtedly has standing to challenge the seizure of his own person which occurred in the form of the stop and ensuing detention."); *United States v. Starks*, 769 F.3d 83, 89 (1st Cir. 2014) ("Even accepting the district court's finding that [the defendant] was an unlicensed, unauthorized driver, his status was still no less than that of a passenger. [Therefore], [he] was seized within the meaning of the Fourth Amendment, and thus has standing to challenge the constitutionality of the stop."); *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) ("[A]lthough a defendant may lack the requisite possessory or ownership interest in a vehicle to directly challenge a search of that vehicle, the defendant may nonetheless contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the illegal detention."). By contrast, the case on which the government relies, *United States v. Lyle*, 919 F.3d 716 (2d Cir. 2019), concerned an unauthorized driver's standing to challenge the search of a rental car, not standing to challenge any antecedent seizure. Here,

Defendants' affidavits sufficiently establish that they were occupants of the vehicle that Officer McDonnell stopped, and they therefore had standing to challenge the constitutionality of the stop.

Third, the government contends that, contrary to the R&R, there was reasonable suspicion for the traffic stop. The government cites Officer McDonnell's testimony that he "observed an object hanging from the rearview mirror of the vehicle" and that the "object was hung in a manner to obstruct the driver's view." ECF No. 313 at 13.

In making this argument, the government fails to meaningfully challenge Judge McCarthy's credibility finding. The evidence presented at the hearing was conflicting. On the one hand, Officer McDonnell testified that as he drove behind Lewis's vehicle, he noticed an object hanging from the rearview mirror that appeared to obstruct the driver's view. ECF No. 279 at 15. On the other hand, there were reasons to doubt Officer McDonnell's claim and to instead conclude that he did not, in fact, observe any obstruction prior to initiating the stop. As Judge McCarthy noted, the air freshener was placed in a standard position and was of conventional size. Because the Explorer's windows were tinted, it was "unlikely that [Officer McDonnell] would have been able to sufficiently view and determine there was any obstruction, especially a four-by-two inch air freshener hanging only partially below the rearview mirror." ECF No. 308 at 10. Moreover, Officer McDonnell's own conduct was inconsistent with his claim that he observed an obstruction—he did not immediately pull over the Explorer when he claims to have observed it, but instead waited until Lewis turned into a parking lot. *Id.* at 11. Finally, in his grand jury testimony, Officer McDonnell did not identify that observation as the basis for the stop.

The government has given the Court no reason to find Judge McCarthy's credibility judgment questionable. To the contrary, the Court finds it reasonable and adopts it. Accordingly, because Officer McDonnell did not view an obstruction in the Explorer's windshield before

initiating the traffic stop, he could not have reasonably suspected that Lewis had committed a violation of Section 375.30.[1] *See United States v. Townsel*, No. 16-CR-20084, 2016 WL 7109677, at *5 (W.D. Tenn. Dec. 6, 2016) (concluding that officer did not have reasonable suspicion to justify traffic stop where his testimony that he had witnessed a seatbelt violation was not credible); *see also United States v. Gonzalez*, 111 F. Supp. 3d 416, 433 (S.D.N.Y. 2015) (collecting cases).

Fourth, the government argues that suppression is not warranted under these circumstances because Officer McDonnell "did not act in deliberate violation of the law." ECF No. 313 at 16. However, the Court agrees with Judge McCarthy that suppression is warranted where, as here, an officer stops a vehicle without reasonable suspicion of a traffic violation. *See* ECF No. 308 at 12; *see also United States v. Barclay*, No. 10-CR-20570, 2011 WL 1595065, at *5 n.5 (E.D. Mich. Mar. 21, 2011), *R & R adopted by* 2011 WL 1627072 (Apr. 27, 2011) (explaining why suppression is the appropriate remedy in such circumstances).

Fifth, the government invokes the doctrine of inevitable discovery. The government reasons that Lewis "committed a violation of New York State Vehicle and Traffic Laws by driving a car with an obstruction to the rear view mirror and without a license." ECF No. 313 at 18. Therefore, "officers were authorized to arrest [him], and would have been permitted to search the vehicle after his arrest pursuant to an inventory search of the vehicle." *Id.* The Court is not persuaded.

One exception to the exclusionary rule is the inevitable discovery doctrine, under which "the fruits of an illegal search or seizure are nevertheless admissible . . . if the government can prove that the evidence would have been obtained inevitably without the constitutional violation."

---

[1] Much of the government's brief is devoted to the issue of pretext . *See* ECF No. 313 at 12-15. That issue did not factor into Judge McCarthy's analysis: he expressly acknowledged that an officer's subjective motivations do not bear on the question of reasonable suspicion, ECF No. 308 at 6, and his conclusion rested on the adverse credibility finding.

*United States v. Stokes*, 733 F.3d 438, 444 (2d Cir. 2013) (internal quotation marks omitted). "The government bears the burden of proving inevitable discovery by a preponderance of the evidence." *Id.* Importantly, the focus is on "demonstrated historical facts" rather than speculation, and a court must determine "what would have happened had the unlawful search never occurred." *Id.* (emphases omitted). "Evidence should not be admitted, therefore, unless a court can find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." *Id.* (internal quotation marks omitted).

The government has not proven the premise of its argument—that officers would have arrested Lewis notwithstanding the illegality of the stop. To the contrary, Officer McDonnell only developed the grounds for Lewis's arrest *after* he had already initiated the stop. If the stop had not occurred, Officer McDonnell would not have learned that Lewis did not have a driver's license. Likewise, taking into account Judge McCarthy's adverse credibility finding, Officer McDonnell did not observe an obstruction in the Explorer's rearview mirror before initiating the traffic stop. At most, Officer McDonnell testified that, if he had not seen the air freshener while driving behind Lewis's vehicle, he "would have continued to follow the vehicle until [he] observed a . . . traffic infraction," at which point he would have "stopped the vehicle." ECF No. 279 at 55. That speculative assertion—that he would have stopped Lewis's vehicle at some unidentified point in the future *once* Lewis committed a traffic violation—does not give the Court the "high level of confidence" necessary to apply the doctrine of inevitable discovery. *Stokes*, 733 F.3d at 444.

### d. Conclusion

In sum, the Court rejects the government's arguments and accepts Judge McCarthy's R&R (ECF No. 308). Accordingly, Defendants' motions to suppress (ECF Nos. 244, 254) are GRANTED.[2]

## II. Motion to Sever

The superseding indictment alleges the following charges: (1) Shine and Lewis engaged in a narcotics conspiracy in mid- to late-2016 (Count I); (2) Lewis used and maintained a drug-involved premises in November 2016 (Count II); (3) in September 2016, Lewis possessed with intent to distribute cocaine base (Count III); (4) in September 2016, Lewis possessed a firearm in furtherance of a drug trafficking crime (Count IV); (5) in September 2016, Lewis unlawfully possessed a firearm and ammunition as a felon (Count V); (6) in October 2016, Shine and Lewis possessed with intent to distribute cocaine base (Count VI); (7) in November 2016, Lewis possessed with intent to distribute cocaine base (Count VII); (8) in December 2016, Shine used and maintained a drug-involved premises (Count VIII); (9) in December 2016, Shine possessed with intent to distribute cocaine base (Count IX); (10-14) between October 2014 and December 2016, Shine engaged in sex trafficking of five victims (Counts X-XIV); and (15) between October 2014 and December 2016, Shine conspired to commit sex trafficking (Count XV). ECF No. 58.

Lewis moves for relief under Rule 14, under which a court may "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). He argues that severance is appropriate both because the evidence related to Shine's sex-

---

[2] In his response to the government's objection, Lewis suggests that a hearing may be necessary to determine "the breadth and scope of the evidence, information and testimony that must be suppressed as the fruit of the poisonous tree." ECF No. 317 at 34. Shine raises a similar issue. *See* ECF No. 254 at 3-5 (suggesting that evidence pertaining to the sex trafficking charges was obtained as a result of the traffic stop). The parties should be prepared to address this issue at the upcoming status conference.

trafficking charges would be prejudicial and inadmissible against him, and because a joint trial would predominantly focus on the sex-trafficking charges. Lewis therefore requests that the Court "either sever [] Lewis' trial from that of [Shine] in its entirety, or . . . sever [Shine's] sex trafficking counts from the narcotics related charges." ECF No. 245-1 at 5.

The government opposes the motion. Its theory of the case is that Lewis supplied Shine with illegal narcotics and that "some of the drugs that [Shine] purchased from [Lewis] were then given to sex trafficking victims as part of Shine's coercion of them to commit commercial sex acts for money." ECF No. 316 at 4. While acknowledging that "most if not all" of the law enforcement witnesses pertaining to Shine's sex trafficking charges will not provide evidence against Lewis, the government avers that some of the victims will testify that Lewis supplied drugs to Shine. *Id.* at 8. For that reason, the government contends there is a "factual overlap between the narcotics and sex trafficking counts," though it concedes that there is no evidence implicating Lewis in the sex trafficking conspiracy. *Id.* The government also argues that any prejudice to Lewis could be ameliorated through a limiting instruction to the jury.

### a. Legal Standard

"Rule 14(a) grants the court discretion to sever the trials of codefendants where they have been indicted together properly under Rule 8(b), but joinder nonetheless 'appears to prejudice a defendant or the government.'" *United States v. Forde*, 699 F. Supp. 2d 637, 640 (S.D.N.Y. 2010). "A defendant seeking severance pursuant to Rule 14(a) must overcome the strong presumption in favor of trying jointly indicted defendants together." *Id.* at 640-41; *see also United States v. Weaver*, No. 13-CR-120, 2014 WL 173480, at *1 (E.D.N.Y. Jan. 10, 2014).

"In evaluating a defendant's Rule 14(a) motion, courts must consider that separate trials of jointly indicted defendants could impair both the efficiency and the fairness of the criminal justice

12

system by requiring that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying." *Forde*, 699 F. Supp. 2d at 641 (quotation omitted). Furthermore, "jointly trying [co-]defendants serves the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.* (internal quotation marks and brackets omitted).

A motion for severance should only be granted if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Weaver*, 2014 WL 173480, at *1 (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). Factors include "the number of defendants and the number of counts; the complexity of the indictment; the estimated length of the trial; disparities in the amount or type of proof offered against the defendants; disparities in the degrees of involvement by defendants in the overall scheme; possible conflict between various defense theories or trial strategies; and, especially, prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant." *United States v. Locascio*, 357 F. Supp. 2d 536, 543 (E.D.N.Y. 2004). Ultimately, however, "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro*, 506 U.S. at 541.

### b. Analysis

The Court agrees with Lewis that severance is appropriate under these circumstances. As the government itself acknowledges, Lewis has raised "a valid concern of spillover prejudice." ECF No. 316 at 9. Shine is alleged to have used force and coercion to cause multiple victims to engage in commercial sex acts, *see* ECF No. 58, and is specifically alleged to have "used [narcotics] to control and coerce" the sex trafficking victims. ECF No. 316 at 6. In itself, the

evidence pertaining to such charges is inflammatory and would be inadmissible against Lewis if he were tried alone. *See United States v. Cardascia*, 951 F.2d 474, 483 (2d Cir. 1991) ("Relief by severance may be more appropriate when the unrelated evidence reflects activities of a violent nature because the risk of substantial prejudice is greater."). Moreover, because Shine's alleged sex trafficking activities form the central focus of the government's case in terms of witnesses, the amount of prejudicial and otherwise inadmissible evidence will not be inconsequential. *Cf. United States v. Gallo*, 668 F. Supp. 736, 750 (E.D.N.Y. 1987) (noting the "inevitable prejudice" to peripheral defendants that is caused by the "slow but inexorable accumulation of evidence" against the "major players").

Finally, the Court is not persuaded that a limiting instruction will ameliorate the risk of spillover prejudice. This is chiefly because the government's theory, at least as to Shine, rests on the interconnection between the charged narcotics conspiracy and the sex-trafficking conspiracy— *i.e.*, Shine obtained drugs to coerce victims into engaging in commercial sex acts. Thus, the government intends to argue that there is a link between Lewis's alleged narcotics activities and Shine's alleged sex trafficking operation—and it is that exact link that unfairly prejudices Lewis. Given the government's intended approach, it would demand too much of the jury to require that they compartmentalize the sex-trafficking evidence from the narcotics evidence with respect to Lewis, while at the same time evaluating the evidence holistically as to Shine. *See id.* at 753 (recognizing the difficulties of "compartmentalizing all of the independent evidence and of focusing the jury's attention on only the non-hearsay, non-excluded evidence as to each defendant and each charge").

In short, the risk of prejudice to Lewis is serious enough to justify relief. Both sides appear to prefer that the Court sever the co-defendants' trials rather than sever the narcotics charges from

14

the sex-trafficking charges. The Court agrees that, in the interests of efficiency and fairness, Lewis should be tried separately from Shine.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS Judge McCarthy's R&R (ECF No. 308) in all respects. Defendants' motions to suppress (ECF Nos. 244, 254) are GRANTED. Defendant Lewis's motion to sever (ECF No. 245) is GRANTED, in that the Court severs Lewis's trial from Shine's trial. At the upcoming status conference, the parties should be prepared to address how this case should proceed in light of the Court's rulings.

IT IS SO ORDERED.

Dated: June 12, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court